# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLTON YOST and<br>AAH ACQUISITION, LLC (d/b/a ALL-<br>AMERICAN HOSE) | ) )<br>) | C.A. No. 18-CV-311Erie |
| Plaintiffs, | ) | |
| | ) | District Judge Susan Paradise Baxter |
| v. | ) ) | |
| MID-WEST HOSE AND SPECIALTY,<br>INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.  Procedural History

Plaintiffs Colton Yost and his present employer AAH Acquisition, LLC (doing business as All-American Hose) (hereinafter, "All-American Hose") initiated this civil action by filing a complaint for declaratory judgment. ECF No. 1. As the sole Defendant to this action, Plaintiffs name Mid-West Hose and Specialty, Inc. ("Mid-West Hose"), Mr. Yost's former employer. This case arises out of the present employment of Mr. Yost as an extruder operator at All-American Hose. The parties do not dispute that Mr. Yost signed a non-competition/nondisclosure agreement with his former employer or that the two corporations are competitors in the manufacture of 10- and 12-inch hose.

Defendant Mid-West Hose filed an Answer and Counterclaims bringing a breach of contract claim against Mr. Yost and an intentional interference with contractual relations claim

against All-American Hose. ECF No. 10. As relief, Defendant seeks to enjoin All-American Hose's continuing employment of Yost, as well as monetary damages. *Id.* at 10.

Defendant Mid-West Hose also filed a motion for preliminary injunction, seeking:

> 1) An injunction […] against Colton Yost for a period of 18 months […] enjoining Mr. Yost from accepting or continuing employment with All-American Hose or any other business or enterprise within the scope of the prohibition set forth in the August 21, 2017 Noncompetition, Nonsolicitation, and Nondisclosure Agreement between Midwest Hose and Mr. Yost; and
>
> 2) […] an injunction […] against Mr. Yost for a period of 18 months […] enjoining All-American Hose from continuing employment of Mr. Yost.

ECF No. 11-4, page 1. Defendant argues that because Mr. Yost's new employment violates his noncompetition/nondisclosure agreement, the Court should preliminarily enjoin Mr. Yost's employment during the pendency of this case. ECF No. 11, page 1. Defendant's argument in this regard is limited to the breach of contract claim.

## II.    Choice of Laws on the Breach of Contract Claim

Because this Court exercises diversity jurisdiction over this matter, a choice of laws determination must be made at the outset. The Agreement between Mr. Yost and Mid-West Hose contains a choice of laws clause that provides that the laws of the State of Florida "shall govern this Agreement and the Parties' rights, obligations and/or liabilities under this Agreement and/or that relate to Covenantor's employment with Company at law or in equity." ECF No. 1-1, page 6.

Where a district court's jurisdiction rests on the diversity of the parties, as it does here, the district court must apply the choice of law rules of the forum state. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). *See also Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 497 (1941). Under Pennsylvania law, "courts generally honor the intent of the contracting

parties and enforce choice of law provisions in contracts executed by them" (*Kruzits v. Okuma Mach. Tool*, 40 F.3d 52, 55 (3d Cir. 1994)) except in situations where either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007) *citing* § 187 of the Restatement (Second) Conflict of Laws.

Mr. Yost and All-American Hose argue that despite the agreement's express language, Pennsylvania law should apply to this dispute because: 1) none of the parties has any relevant connection to Florida and the dispute occurred in Pennsylvania; and 2) there is a fundamental conflict between Florida law and Pennsylvania law (as Pennsylvania law requires a court to balance the protectable interest of the party seeking enforcement against an employee's interest in earning a living, while a Florida statute expressly forbids any such balancing analysis). Conversely, Mid-West Hose argues that the Florida statute should apply because Mid-West Hose has a substantial relationship to Florida and has an interest in the uniform application of its restrictive covenants, "a feat accomplished through Florida's detailed laws on the topic." ECF No. 25, page 7.

Neither the pleadings nor the record indicates that Mid-West Hose has a <u>substantial relationship</u> to Florida. Mid-West Hose is an Oklahoma corporation with its principal place of business in Oklahoma. ECF No. 1, Complaint, ¶ 3; ECF No. 10, Answer, ¶ 3. At the evidentiary hearing, Mark Lockhart of Mid-West Hose testified that the corporation has twenty-six branches throughout the United States including two branches in the state of Florida. ECF No. 28, page 5. Mid-West Hose suggests that Florida law was specified in the Agreement because "Florida had

codified its laws regarding the interpretation of restrictive covenants, leading to a more streamlined and consistent approach to enforceability throughout Mid-West Hose's operations." ECF No. 25, page 7. Maintaining two out of twenty-six branches in a state, without more, does not demonstrate a substantial relationship to that state.

Even assuming, for the purposes of this motion only, that Mid-West Hose has a substantial relationship to Florida and the choice of Florida is a reasonable one due to the state's detailed statutory structure regarding restrictive covenants, the application of Florida's law would be contrary to a fundamental policy of the Commonwealth of Pennsylvania "which has a materially greater interest" in the determination of the particular issue. While many of the elements of the enforceability of a covenant not to compete are the same between the two states, Florida has codified its approach to the enforceability of restrictive covenants, while under Pennsylvania common law, restrictive covenants are generally disfavored.[1] F.S.A. § 542.335; *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) ("[M]andating compliance with a covenant not to compete is disfavored."); *Siemens Medical Solutions Health Services Corp. v. Carmelengo*, 167 F.Supp.2d 752, 760 (E.D. Pa. Apr.12, 2001) ("because they constitute a "restraint on an employee's trade," restrictive covenants "are strictly construed against the employer" by Pennsylvania courts).

To Plaintiffs' point, Florida law expressly prohibits a court from considering any "individualized economic harm or other hardship that might be caused to the person against

---

[1] Florida's statute provides that restrictive covenants are not prohibited and are enforceable when: 1) they are in writing; 2) there is a legitimate business interest as defined in the statute; and 3) the covenant is reasonably necessary to protect the legitimate business interest. F.S.A. § 542.335(1)(a) – (c). Meanwhile, Pennsylvania law permits restrictive covenants if: "1) they relate to a contract for employment; 2) are supported by adequate consideration; and 3) the application of the covenant is reasonably limited in both time and territory." *Freedom Medical Inc. v. Whitman*, 343 F.Supp.3d 509, 527 (3d Cir. 2018) *citing Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207, 210 (1976).

whom enforcement is sought" F.S.A. § 542.335(g)(1), while Pennsylvania law provides that a court is required to balance the protectable interest of the party seeking enforcement against a former employee's interest in earning a living. *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010) ("[A] court should not impose lightly" a preliminary injunction "prohibiting someone from pursuing his livelihood in the manner he chooses" as such is "a severe restriction on him."). *See also PharMethod, Inc. v. Caserta*, 382 F.App'x 214, 220 (3d Cir. 2010) ("A court must make an in-depth inquiry before entering a preliminary injunction that may have an impact on a person's livelihood."). This presents a fundamental conflict between the laws of the two states as to the law on the breach of contract claim.

In another important distinction, Florida law does not require the execution of a noncompetition agreement contemporaneous with the start of the employment relationship, while Pennsylvania requires restrictive covenants to be included in the initial employment agreement or if agreed upon later, to be supported by new consideration. *See* F.S.A. § 542.335; *Pulse Technologies, Inc. v. Notaro & MK Precision LLC*, 620 Pa. 322, 328 (2013) *quoting Maintenance Specialties Inc. v. Gottus*, 455 Pa. 327, 331 (1974) ("While a restrictive covenant, in order to be valid need not appear in the initial contract, if it is agreed upon at some later time it must be supported by new consideration.").

For all of these reasons, we find there is a conflict between the Florida and Pennsylvania law on the breach of contract claim. Here, the parties entered into an agreement in Pennsylvania, Mr. Yost is a resident in Pennsylvania, both corporations have manufacturing facilities and employ others in Pennsylvania. Because Pennsylvania has a materially greater interest in the application and enforcement of restrictive covenants entered into in its Commonwealth, we will apply Pennsylvania law.

### III. The Evidentiary Hearing and Standard of Review

This Court held an evidentiary hearing on November 29, 2018 at which the following people testified: Mark Lockhart, Technical Director at Mid-West Hose; Kyle Stine, Extrusion and Finishing Manager at Mid-West Hose; Colton Yost, Plaintiff; and Robert Maleski, Manager of Engineering and Strategic Purchasing at All-American Hose. Following the hearing, the parties were encouraged to supplement their briefing, specifically with regard to irreparable injury, which they did. *See* ECF No. 28, page 43.

A preliminary injunction is "an extraordinary remedy granted only in limited circumstances." *Issa v. School District of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) *citing Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014). There are four factors a court must consider when evaluating a motion for preliminary injunctive relief:

1) Has the moving party established a reasonable likelihood of success on the merits (which need not be more likely than not);

2) Is the movant more likely than not to suffer irreparable harm in the absence of preliminary relief;

3) Does the balance of equities tip in its favor; and

4) is an injunction in the public interest?

*Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. Apr. 22, 2019) *citing Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). After the movant meets the first two "gateway factors," the court then determines whether all four factors, taken together, balance in favor of granting the relief sought. *Id.*

With this standard of review in mind, having now considered the testimony of the witnesses and the evidence admitted at the evidentiary hearing, as well as the submissions of the

parties, the Court makes Findings of Fact and Conclusions of Law denying the motion for preliminary injunction. *See* Federal Rule of Civil Procedure 52.

## IV.  Findings of Fact

*The Parties*

1. Plaintiff Colton Yost is a resident of Pennsylvania.

2. AAH is a Delaware limited liability corporation with its principal place of business in Pennsylvania doing business as "All- American Hose."

3. Defendant Mid-West Hose is an Oklahoma corporation doing business in Pennsylvania. ECF No. 1, Complaint, ¶ 3; ECF No. 10, Answer, ¶ 3. Mid-West Hose has twenty-six branches around the United States, including two branches in the state of Florida. ECF No. 28, Transcript, page 5.

4. All-American Hose's Union City facility is located less than 14 miles from Mid-West Hose's Corry facility. ECF No. 34, Stipulated Findings of Fact.

*Hose Manufacturing Generally*

5. All-American Hose and Mid-West Hose are competitors in the hose manufacturing business[2]. ECF No. 28, page 30.

6. The manufacturing process for any TPU hose begins by weaving a polyester jacket in a weaving loom. The jacket is moved to an extruder where the jacket enters an extruder head and is surrounded with TPU and heated and dried to create a water-

---

[2] Both companies make rubber and thermoplastic polyurethane (TPU) lay-flat hoses. ECF No. 34, Stipulated Findings of Fact.

tight seal. Following completion, a coupling is applied and the hose is tested for leaks or defects. Once the hose passes testing, it is ready for transport. ECF No. 34, Stipulated Findings of Fact.

7. Large diameter TPU hoses, those with a 10- or 12-inch diameter, are more difficult to make than smaller hoses. ECF No. 34, Stipulated Findings of Fact.

8. At its Corry, Pennsylvania facility, Mid-West Hose primarily manufacturers 10- and 12-inch diameter hose. ECF No. 34, Stipulated Findings. In 2012, All-American Hose began manufacturing large diameter TPU lay-flat hoses. All-American Hose already manufactured smaller hoses with 2-, 4- and 6-inch diameters and started making 10- and 12-inch diameter hoses. ECF No. 34, Stipulated Findings of Fact.

9. At the present time, All-American Hose is not producing 10- or 12-inch diameter hose, but may at some time in the future. ECF No. 28, page 113.

*Mr. Yost's Employment History*

10. In 2012 and 2013, Colton Yost was employed by All-American Hose's predecessor-in-interest. ECF No. 34, Stipulated Findings of Fact.

11. During his initial employment with All-American Hose, Mr. Yost worked in the weaving and finishing testing departments for small diameter hoses. He did not work in the extrusion department. Mr. Yost was laid off by All-American Hose in 2013. ECF No. 34, Stipulated Findings of Fact.

*Mr. Yost's Employment and Agreement with Mid-West Hose*

12. In August 2017, Mr. Yost was hired by Mid-West Hose at its Corry, Pennsylvania

    manufacturing facility as an extrusion operator. ECF No. 34, Stipulated Findings of

    Fact.

13. By letter dated August 10, 2017, Howard Perkins, the Director of Operations of Mid-

    West Hose, offered Mr. Yost the position as an extruder operator. The letter

    explained:

    > "... your employment with Midwest Hose & Specialty Inc. is at-will and
    > neither this letter nor any other representation constitutes an express or
    > implied contract, guarantee, promise, or covenant of any type. [...] This is
    > a conditional offer of employment contingent upon the results of your
    > reference/background check and drug test and, if not previously accepted
    > by you, will expire seven (7) days from the date of this letter."

    Exhibit 1. The letter does not mention any restrictive covenant.

14. The letter provided that Mr. Yost would be paid $12.50 an hour plus a $0.40 per hour

    increase after assignment to second shift. *Id.* This rate of pay is approximately

    $13,500.00 annually.

15. Mr. Yost signed and dated the August 10th letter on the same date thereby "agree[ing]

    to the terms of the employment set forth above." *Id.*

16. Mid-West Hose's Employee Handbook indicates that only the owner has the

    authority to enter into an employment agreement or any other agreement on behalf of

    the company. Exhibit 3.

17. Mr. Perkins is not the owner of Mid-West Hose. ECF No. 28, pages 44-46.

18. Based on Mr. Yost's signing of the August 10th letter, Mr. Yost resigned his

    employment. ECF No. 28, page 104.

19. Mr. Yost began his employment with Mid-West Hose on August 21, 2017. ECF No. 28, page 42.

20. On August 21, 2017, Mr. Yost signed a Noncompetition, Nonsolicitation, and Nondisclosure Agreement ("Noncompetition Agreement") with Mid-West Hose, along with other employment documents.[3] ECF No. 1-1; ECF No. 34, Stipulated Findings of Fact; and Plaintiff's Exhibits 2, 4.

21. August 21, 2017, was Mr. Yost's first day of work and was the first time he saw the eight-page Noncompetition Agreement. ECF No. 28, page 104.

22. Mr. Yost did not read the Noncompetition Agreement before signing it because he feared that if he would have taken the time to do so, he would not have a job. ECF No. 28, Transcript, page 104. Mr. Yost knew he was signing a "non-competition agreement." *Id.* at page 105.

23. Mr. Yost signed other employment related documents, including an Acknowledgement of Receipt of Employee Handbook and an Acknowledgment of Receipt of the Addendum to the Handbook, that same day and he did not read any of them. *Id. See also* Exhibits 2, 4.

24. According to the Technical Director at Mid-West Hose, execution of the Noncompetition Agreement is a required condition of employment. ECF No. 28, page 21. This Court does not find this testimony credible based on other evidence before this Court[4]. If agreeing to the NC was a required condition of employment, the

---

[3] Only the noncompetition and nondisclosure portions of the agreement are at issue in the present lawsuit.

[4] When ruling on a motion for a preliminary injunction,

document should have been presented to Mr. Yost in advance of his first day of work and ideally, should have been presented to him when the terms of his employment were being discussed (and before he resigned from his prior employment).

25. The Noncompetition Agreement was signed by Howard Perkins on behalf of Mid-West Hose. Exhibit A.

26. In the Noncompetition Agreement, Mr. Yost agreed that for a period of 18 months after termination of employment, he would not, directly or indirectly, engage in, or have an interest in, any business that competes with Mid-West Hose within Erie County or any county adjacent to or contiguous with Erie County. (Agreement, § 2.01). ECF No. 34, Stipulated Findings of Fact.

27. Under the Noncompetition Agreement, Mr. Yost also acknowledged his receipt of proprietary information and agreed not to use, disseminate, or disclose any such information during and after the term of his employment with Mid-West Hose. (Agreement, § 2.03(b)). ECF No. 34, Stipulated Findings of Fact.

28. The Noncompetition Agreement provides a remedy in the event of a breach, as follows:

> "Covenantors … and Company … agree that the amount of damages resulting to Company from any covenantor's breach of this Agreement is difficult to ascertain. If Company, in its sole discretion, elects to pursue a damage award, Covenantor agrees that Company is entitled to liquidated damages from

---

"a court both finds facts and determines the law. *See* Fed. R. Civ. P. 52(a)(1) & (2). In its fact-finding capacity, at an evidentiary hearing, a court may make credibility determinations as to the witnesses' testimony and the evidence presented during the hearing. *See, e.g., Hudson Global Resources Holdings, Inc. v. Hill,* Civ. A. No. 07-132, 2007 WL 1545678, at *8 (W.D.Pa. May 25, 2007) ("A court considering whether to grant a preliminary injunction may assess the credibility of witnesses testifying before it at a preliminary injunction hearing, and base its decisions on credibility determinations.")."

Berger v. Weinstein, 2008 WL 2876572, at *4 (E.D. Pa. July 24, 2008).

Covenantor in the amount of $50,000.00. Covenantor acknowledges and agrees that the rights of Company under this Agreement are of a specialized and unique character and that immediate and irreparable damage will result to the Company if Covenantor fails to or refuses to perform its obligations under this Agreement. Despite any election by the Company to claim damages from Covenantor as a result of any such failure or refusal, Company may, in addition to any other remedies and damages available, seek a temporary or permanent injunction or other equitable relief in a court of competent jurisdiction, without the need to post a bond or other security to restrain any such failure or refusal."

ECF No. 1-1, page 4.

29. As an extruder operator at Mid-West Hose, Mr. Yost was responsible for the extrusion process of TPU hose. ECF No. 34, Stipulated Findings of Fact.

30. Mr. Yost remained employed by Mid-West Hose between August 2017 and September 2018. During that time, he was promoted to lead extruder, meaning he was the point person for other extruders on that particular shift. ECF No. 34, Stipulated Findings of Fact.

31. On September 21, 2018, Yost informed Mid-West Hose he was resigning to work for All-American Hose. ECF No. 34, Stipulated Findings of Fact.

*Mr. Yost's Present Employment with All-American Hose*

32. Mr. Yost was hired as a trainee third shift supervisor of All-American Hose's Union City facility and started work on September 26, 2018. ECF No. 34, Stipulated Findings of Fact.

33. The wages offered at All-American Hose are "considerably" higher than those at Mid-West Hose and All-American offered opportunity for advancement. ECF No. 28, page 110.

34. All-American Hose was aware that Mr. Yost had a restrictive covenant when he was hired. ECF No. 34, Stipulated Findings of Fact.

V. **Conclusions of Law**

1. Preliminary injunctions are "extraordinary remed[ies] granted in limited circumstances." *Razor Technology, LLC v. Hendrickson*, 2018 WL 2063844, at *8 (E.D. Pa. 2018). *See also Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

2. The four-factor preliminary injunction standard requires the moving party first to demonstrate a reasonable likelihood of success on the merits and that it would likely suffer irreparable harm absent the award of an injunction. *ADP, LLC v. Rafferty*, 923 F.3d 113, 119-20 (3d Cir. 2019) *citing Reilly*, 858 F.3d at 179.

3. If the movant makes that threshold showing, the court then must balance those two "gateway factors" against the relative hardship an injunction would inflict on the parties and the public interest. *Id.*

4. The showing of irreparable harm will be "insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a 'clear showing of immediate irreparable harm.'" *Washington v. Superintendent Gilmore*, 2019 WL 2610765, at *6 (W.D. Pa. Jun. 29, 2019) *quoting Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

5. Defendant Mid-West Hose seeks a preliminary injunction on its breach of contract claim against Mr. Yost. Accordingly, it is Mid-West Hose's burden to

prove a likelihood of success on its claim and that it will suffer irreparable injury if a preliminary injunction is not granted.

6. Restrictive covenants are to be closely scrutinized: "A court must make an in-depth inquiry before entering a preliminary injunction that may have an impact on a person's livelihood." *Freedom Medical*, 343 F.Supp.3d at 527, *quoting PharMethod, Inc. v. Caserta*, 382 F.App'x 214, 220 (3d Cir. 2010).

*Likelihood of Success on the Merits of the Breach of Contract Claim against Mr. Yost*

7. Demonstrating a likelihood of success on the merits requires only that the party "prove a *prima facie* case, not a certainty that he or she will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001) (internal citation omitted).

8. Mid-West Hose has not provided persuasive evidence to demonstrate a likelihood of success on its breach of contract claim as it has not proven the initial element of its claim: the existence of a valid agreement. To prove a breach of contract, a party must prove "the existence of a contract (including its essential terms), a breach of duty imposed by the contract[,] and resultant damages." *Ozburne-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F.Supp.3d 437, 454 (E.D. Pa. 2014) *quoting General State Auth. v. Coleman Cable & Wire Co.*, 3665 A.2d 1347, 1349 (1976).

9. The evidence before this Court suggests that the agreement was not signed by a person with authority to bind Mid-West Hose. The Employee Handbook specifically indicates that only the owner may enter into employment agreements

and Howard Perkins, who signed the agreement on behalf of the company, is not an owner. ECF No. 28, at page 54; Exhibit 3.

10. Moreover, in order to enforce a restrictive covenant under Pennsylvania law, the covenant must satisfy three requirements: "1) the covenant must relate to … a contract for employment; 2) it must be supported by adequate consideration; and 3) the application of the covenant must be reasonably limited in both time and territory." *Siemens Medical*, 167 F.Supp.2d at 760, *citing Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207, 210 (1976). *See also Freedom Medical Inc. v. Whitman*, 343 F.Supp.3d 509, 527 (3d Cir. 2018). As to the consideration piece, "if a restrictive covenant is included in an initial employment contract, the employment itself is sufficient consideration, [b]ut if the restrictive covenant is agreed upon at some later time it must be supplied by new consideration. *Ozburne-Hessey*, 40 F.Supp.3d at 454-55, *citing Pulse Technologies*, 620 Pa. at 328 and *George W. Kistler, Inc., v. O'Brien*, 464 pa. 475 (1975). *See also Rullex Co., LLC v. Tel-Stream, Inc.,* 2019 WL 168285 (Pa.Super. Jan. 11, 2019) *appeal granted by* 2019 WL 4267373 (Pa. Sept. 10, 2019).

11. The August 10, 2017 letter signed by Howard Perkins, on behalf of Mid-West Hose assuming he had authority to do so, and Mr. Yost constitutes both offer and acceptance of the employment agreement. This August 10th letter makes no mention of any restrictive covenant. Therefore, the noncompetition agreement signed on August 21st is subsequent to the original consideration and must be supported by additional consideration which is not evident here.

12. Mid-West Hose has not established it is likely to succeed on the merits because it has not produced persuasive evidence of an enforceable agreement – the most basic element of the breach of contract claim. The agreement at issue may not be signed by an appropriate agent with authority to bind the corporation and the restrictive covenant was not supported by any new consideration.

*Irreparable Harm to Mid-West Hose*

13. The evaluation of a request for preliminary injunctive relief is a balancing test. *Fulton,* 922 F.3d at 152. "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the [movant's] claim on the merits can be while still supporting some preliminary relief." *Reilly*, 858 F.3d at 179, *quoting Hoosier Energy Rural Elec. Corp., Inc. v. John Hancock Life Ins. Co*., 582 F.3d 721, 725 (7th Cir. 2009) (Easterbrook, C.J.). Because Defendant has provided a low likelihood of success on the merits of its claim, in order to succeed on its request for a preliminary injunction, Mid-West Hose has an increased burden on the irreparable injury factor.

14. Mid-West Hose has not made a clear showing of any immediate irreparable injury. At the time of the evidentiary hearing, All-American Hose was not making 10- or 12-inch diameter hoses due to the lack of customer demand. Moreover, All-American Hose did not know when it might be making them in the future.

15. The irreparable harm prong "requires courts to determine whether it is 'more likely than not [the movant will] suffer irreparable harm in the absence of preliminary relief.'" *Reilly*, 858 F.3d at 179.

16. Irreparable harm is "of a peculiar nature" for which "compensation in money alone cannot atone." *Id. quoting Opticians Ass'n of Am. v. Ind. Opticians of Am.,* 920 F.2d 187, 195 (3d Cir. 1990). The injury "cannot be purely economic," but "must pose a potential harm which cannot be redressed by a legal or equitable remedy following trial." *Razor Technology*, 2018 WL 2063844, at *11 (internal citations omitted). *See also Reilly*, 858 F.3d at n.4 ("the availability of money damages for an injury typically will preclude a finding of irreparable harm").

17. To demonstrate irreparable harm, the moving party must show "immediate irreparable injury, or a presently existing actual threat." *Vento v. Certain Underwriters at Lloyds*, 2019 WL 2396554, at * 2 (D.V.I. Jun. 6, 2019) *quoting Acierno v. New Castle Cty.,* 40 F.3d 645, 655 (3d Cir. 1994). The harm must also be "imminent." *Id. quoting Punnett v. Carter*, 621 F.2d 578, 586 (3d Cir. 1980).

18. Because All-American Hose is not producing the large diameter hoses at the present time, there is no direct competition between the two companies and there is no imminent injury to Mid-West Hose. Any injury is purely speculative at this point.

19. Even if this Court were to assume competition between the two and a resulting injury, Mid-West Hose has not met its burden to demonstrate that monetary damages will not redress any injury it sustains.

20. Moreover, Mid-West Hose's inclusion of the liquidated damages clause in the noncompetition agreement cuts against its position that monetary damages are insufficient redress any injury. *See Cerciello v. Sebelius*, 2016 WL 792505, at *6 (E.D. Pa. Mar.1, 2016) *explaining Simpler Consulting, Inc. v. Wall*, 2008 WL

763746 (W.D. Pa. Mar.21, 2008) as holding that "where a [movant] asserts a right to money damages, it is axiomatic that he has an adequate remedy at law, and injunctive relief is not permitted.".

21. While inclusion of a liquidated damages provision may not be per se proof that money damages are insufficient to remedy the injury, it does weaken the movant's position.[5]

*Other Factors*

22. Because Mid-West Hose has not met its burden to demonstrate either the first or second "gateway factors," this Court need not weigh the relative hardship an injunction would inflict on the parties or the public interest.

23. However, the Third Circuit has held that "There is a public interest in employers being free to hire whom they please and in employees being free to work for whom they please. Of these latter two interests, Pennsylvania courts consider the right of the employee to be the more significant." *Bimbo Bakeries*, 613 F.3d at 119, *citing Renee Beauty Salons, Inc. v. Blose-Venable*, 438 Pa.Super. 601, 652 A.2d 1345, 1347 (Pa.Super.Ct. 1995).

24. A balancing of the four factors weighs against granting preliminary injunctive relief to Mid-West Hose.


An appropriate Order will follow.

---

[5] It is worth noting that the $50,000.00 liquidated damages is not based on Mr. Yost's annual earnings of approximately $13,500.00, but is instead based on it being a large enough dollar amount to prevent an employee from leaving Mid-West Hose and going to a competitor. See ECF No. 28, page 33.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COLTON YOST and )
AAH ACQUISITION, LLC (d/b/a ALL ) C.A. No. 18-CV-311Erie
AMERICAN HOSE) )
      **Plaintiffs,** )
       ) Re: ECF No. 11
      **v.** )
       )
MID-WEST HOSE AND SPECIALTY, )
INC., )
      **Defendant.** )

# O R D E R

AND NOW, this 25th day of September, 2019;

In accordance with the Memorandum Opinion with Findings of Fact and Conclusions of Law issued this date,

IT IS HEREBY ORDERED that the motion for preliminary injunction [ECF No. 11] is DENIED.

An Initial Case Management Conference will be scheduled by separate Order.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge

1